08-4002-pr
McKithen v. Brown

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term 2009

Argued: February 23, 2010          Decided:  November 19, 2010

Docket No. 08-4002-pr

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

FRANK McKITHEN,

Plaintiff-Appellee,

v.

HON. RICHARD BROWN, DISTRICT ATTORNEY,
QUEENS COUNTY DISTRICT ATTORNEY'S OFFICE,

Defendants-Appellants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Before:  CABRANES and B.D. PARKER, *Circuit Judges*; and
       UNDERHILL,[*] *District Judge*.

Appeal from the July 21, 2008 Memorandum and Order of the United States District

Court for the Eastern District of New York (John Gleeson, *District Judge*), granting plaintiff-

appellee's motion for summary judgment and denying defendants-appellants' cross-motion for

summary judgment.  Plaintiff-appellee sought to compel production of evidence for DNA testing

in order to pursue post-conviction relief.  The District Court held that plaintiff-appellee was

constitutionally entitled to the evidence.  Following the District Court's ruling and while this

---

[*] Stefan R. Underhill, of the United States District Court for the District of Connecticut, sitting by designation.

appeal was pending, the Supreme Court decided *District Attorney's Office for the Third Judicial District v. Osborne*, 129 S. Ct. 2308 (2009), which addressed the same question but reached an opposing result. *Osborne* controls the disposition of this appeal and compels the conclusion that plaintiff-appellee was not entitled to relief under 42 U.S.C. § 1983 because he has no procedural due process right to receive evidence for the purpose of post-conviction DNA testing.

Reversed.

DRAKE A. COLLEY, Corporation Counsel for the City of New York, New York, NY, (Edward F.X. Hart, Michael A. Cardozo, *on the brief*), for Defendants-Appellants.

ALLEN G. REITER, Arent Fox LLP, New York, NY (Matthew Trokenheim, Aswathi Zachariah, *on the brief*), for Plaintiff-Appellee.

Daniel M. Donovan, District Attorneys Association of New York State, White Plains, N.Y. (Anthony J. Servino, Steven A Bender, *on the brief*), for *Amicus Curiae*.

UNDERHILL, *District Judge*.

This case presents the question whether the Constitution provides individuals convicted in New York the right to obtain post-conviction access to the State's evidence for DNA testing. The United States District Court for the Eastern District of New York (John Gleeson, *District Judge*), confronting the question as a matter of first impression on remand from this Court, held that such a right exists under the Due Process Clause of the Fourteenth Amendment and that the plaintiff-appellee was constitutionally entitled to receive evidence for the purpose of post-conviction DNA testing. Following the District Court's ruling and while this appeal was pending, the Supreme Court decided *District Attorney's Office for the Third Judicial District v. Osborne*, 129 S. Ct. 2308 (2009), which addressed the same question but reached an opposing

result. *Osborne* controls the disposition of this appeal and, for the reasons set forth below, compels us to reverse.

**I.      Background**

In 1993, Frank McKithen was tried in New York state court and found guilty of attempted murder, victim and/or witness intimidation, reckless endangerment, criminal possession of a weapon, assault, and resisting arrest, and received an aggregate sentence of 23 to 46 years' imprisonment. Those convictions arose from McKithen's unlawful entry into his estranged wife's apartment and his subsequent assault of her with a knife. At trial, McKithen was identified as the assailant by his wife and another witness who was in the apartment at the time of the incident. The knife was also introduced as physical evidence. Before his conviction, McKithen never requested that the weapon and other physical evidence be tested for fingerprints or undergo DNA analysis.

The New York Appellate Division affirmed McKithen's conviction on appeal, and the New York Court of Appeals denied McKithen's application for leave to appeal. *People v. McKithen*, 634 N.Y.S.2d 128 (App. Div. 2d Dep't 1995); *People v. McKithen*, 88 N.Y.2d 881, 645 N.Y.S.2d 456, 668 N.E.2d 427 (1996). McKithen filed a *pro se* state post-conviction motion to set aside his sentence in 1994, and then a second *pro se* state post-conviction motion to set aside his conviction in 1996. Both were denied. *See McKithen v. Brown*, 565 F. Supp. 2d 440, 445 (E.D.N.Y. 2008).

In August 2001, McKithen moved in New York Supreme Court to perform forensic DNA testing on evidence recovered at the crime scene. That motion was made pursuant to N.Y. Crim. Proc. Law § 440.30(1-a)(a), which provides:

Where the defendant's motion requests the performance of a forensic DNA

test on specified evidence, and upon the court's determination that any evidence containing deoxyribonucleic acid ("DNA") was secured in connection with the trial resulting in the judgment, the court shall grant the application for forensic DNA testing of such evidence upon its determination that if a DNA test had been conducted on such evidence, and if the results had been admitted in the trial resulting in the judgment, there exists a reasonable probability that the verdict would have been more favorable to the defendant.

Specifically, McKithen wanted to analyze any blood that police officers had collected from the knife because, he argued, DNA testing would reveal that the blood was not his wife's, thus exculpating him. He also moved for the knife to be analyzed for fingerprints. McKithen's motion was denied on November 8, 2001, on the basis that there was no reasonable probability that McKithen would have received a more favorable verdict had the forensic testing been performed and the results been admitted at trial. *People v. McKithen*, Indictment No. 3964/92 (N.Y. Sup. Ct. Queens County Nov. 8, 2001).

On March 1, 2002, McKithen commenced an action pursuant to 42 U.S.C. § 1983 against Richard Brown, the Queens County District Attorney, and the Queens County District Attorney's Office (collectively, "Brown") in the District Court. In his complaint, McKithen alleged that Brown's denial of access to evidence for post-conviction DNA testing violated the Due Process Clause, denied McKithen meaningful access to the courts, deprived him of the right to demonstrate his actual innocence in violation of the Eighth Amendment, and deprived him of the right to present evidence as secured by the Confrontation Clause of the Sixth Amendment. His theory of what the forensic DNA would show remained the same: it would reveal that his wife's blood was not on the knife or was not present at the crime scene. McKithen sought an injunction compelling the defendants to disclose evidence for so-called short tandem repeat ("STR") testing, a highly reliable form of DNA analysis. *See Harvey v. Horan*, 285 F.3d 298, 305 & n.1

(4th Cir. 2002) (Luttig, J., respecting denial of rehearing *en banc*) (discussing reliability of STR testing and citing supporting literature); Brandon L. Garrett, *Judging Innocence*, 108 Colum. L. Rev. 55, 63 & n.28 (2008) (same).

Brown first tried to dispose of the case on procedural grounds, arguing that McKithen's claim was foreclosed by the *Rooker-Feldman* doctrine,[1] that the claim was inappropriate for a section 1983 suit and should have been raised in a habeas petition, and that the New York Supreme Court's decision under N.Y. Crim. Proc. Law § 440.30 precluded McKithen's suit. The District Court dismissed the complaint on procedural grounds, holding that McKithen's action was barred by the *Rooker-Feldman* doctrine. McKithen appealed and we reversed.

We held that the *Rooker-Feldman* doctrine was inapplicable because McKithen was not challenging, or in effect appealing, in federal court the New York Supreme Court's denial of his motion for post-conviction DNA testing. In particular, we held that McKithen was not complaining that the New York Supreme Court's judgment injured him and, therefore, at least the second of *Rooker-Feldman*'s requirements was absent. *McKithen v. Brown (McKithen I)*, 481 F.3d 89, 97 (2d Cir. 2007). Rather, we reasoned that his alleged injury — his inability to access physical evidence in order to analyze it forensically — predated the New York Supreme Court's decision. *Id.* at 98. It was the fact of McKithen's conviction and sentence, and not his loss in New York Supreme Court, that was the basis for the state's refusal to disclose its evidence and McKithen's inability to test that evidence for the presence of his wife's DNA.

---

[1] *See Rooker v. Fid. Trust Co.*, 263 U.S 413 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983). For the *Rooker-Feldman* doctrine to apply, (1) a plaintiff must have lost in state court; (2) his injury must have been caused by a state court judgment; (3) he must have invited federal review of that state court judgment; and (4) the state court judgment must have been entered before his federal suit commenced. *McKithen v. Brown*, 481 F.3d 89, 97 (2d Cir.

Next, we held that McKithen's section 1983 claim to receive evidence and conduct DNA testing was not "so well 'within the core of habeas corpus' that it may only be brought in a habeas petition." *Id.* at 99 (quoting *Wilkinson v. Dotson*, 544 U.S. 74, 79 (2005)). We reasoned that McKithen's claim was different than a habeas petition because, should he prevail on his section 1983 action, he would not be entitled to the invalidation of his conviction or sentence, but would only receive evidence that could be put toward a subsequent challenge to the legality of his confinement. *Id.* at 102-03. We also concluded that Brown had waived his *res judicata* defense. Finally, we declined to decide whether McKithen's constitutional claims were collaterally estopped because the District Court had yet to rule on the existence and contours of McKithen's posited right to post-conviction DNA testing, and we were in no position to determine whether any "federal constitutional right to DNA testing is the same as or less than (and included in) the state statutory right" that the New York Supreme Court determined McKithen did not meet. *Id.*

We remanded the case to the District Court to decide the merits of "the extraordinarily important, and delicate, constitutional issue" raised by McKithen: whether the Constitution requires the state to disclose physical evidence to prisoners for the purpose of post-conviction DNA testing. *Id.* at 106. In particular, we instructed the District Court to consider, as a matter of first impression, McKithen's claims under the Due Process Clause of the Fourteenth Amendment. We instructed the District Court to begin its analysis by determining whether McKithen holds a residual post-conviction liberty interest in obtaining evidence and examining it for the presence of potentially exonerative DNA results. *Id.* at 106-07. Furthermore, we directed

2007).

the District Court to apply the framework of *Mathews v. Eldridge*, 424 U.S. 319 (1976), in resolving McKithen's procedural due process cause of action. *Id.* at 107.

Following remand, the District Court issued an opinion holding that McKithen had a procedural due process right to perform forensic DNA testing on the physical evidence the government introduced against him at trial.[2] The District Court began by dismissing Brown's arguments that McKithen's action was barred by *res judicata* or by New York's three-year statute of limitations. *See McKithen v. Brown (McKithen II)*, 565 F. Supp. 2d 440, 447-50 (E.D.N.Y. 2008) (holding that Brown waived his *res judicata* defense and that McKithen's limitations period began to run on August 27, 2001, the date on which a federal court first announced that prisoners have a constitutional right to receive evidence for post-conviction DNA testing). The District Court then conducted a thorough procedural due process analysis using the *Mathews* framework. It began by acknowledging that, although McKithen maintained a residual liberty interest after his valid conviction, his liberty interest was not the right to be free from factually erroneous incarceration.

> [T]o say that the Constitution gives an inmate a liberty interest in release if she is innocent, for the purposes of procedural due process, is to say that an inmate who is innocent is entitled, by the Constitution to be released. . . . That possibility . . . was conspicuously left unresolved in *Herrera v. Collins*, 506 U.S. 390 (1993), where the Supreme Court assumed "for the sake of argument" that "in a capital case a truly persuasive demonstration of actual innocence made after trial would render the execution of a defendant unconstitutional."

*Id.* at 456-57 (quoting *Herrera*, 506 U.S. at 417); *see also id.* at 454 ("The Supreme Court has

---

[2] McKithen's theory for what the DNA evidence would show shifted after our remand. McKithen no longer asserted that forensic testing would demonstrate that his wife's blood was not on the knife or at the crime scene, but claimed that testing would show an absence of *his* DNA on the handle of the knife. That absence, he argued, would prove that he did not commit the crime. *McKithen v. Brown*, 565 F. Supp. 2d 440, 446 n.3 (E.D.N.Y. 2008).

never held that inmates convicted after a valid trial have an interest cognizable as a matter of procedural due process in being released from confinement if they are innocent.").

The District Court identified McKithen's residual liberty interest, rather, as the right of meaningful access to state mechanisms for post-conviction relief — specifically, New York's clemency procedures. That meaningful access right, the District Court held, imposes some affirmative duty on the state as a matter of due process, which was the duty to disclose evidence for post-conviction DNA testing, provided that the disclosure and testing impose only negligible costs on the government; the evidence is in the government's possession; the testing is nonduplicative; and, assuming it yields exculpatory results, the testing would undermine confidence in the trial's outcome. *McKithen II*, 565 F. Supp. 2d at 485. Applying the standard it announced, the District Court held that McKithen had been denied access to evidence in violation of his procedural due process rights when the New York Supreme Court rejected his petition for post-conviction DNA testing. *Id.* at 495. In particular, the District Court emphasized that the New York Supreme Court's interpretation of N.Y. Crim. Proc. Law § 440.30(1-a)(a) posed too great a risk of erroneously depriving McKithen of his right of meaningful access to clemency mechanisms because the state court did not assume that DNA testing would yield exculpatory results. *Id.* at 482-83. Because the New York Supreme Court did not make that assumption when it denied McKithen's motion for post-conviction DNA testing, the District Court determined that McKithen's due process claim was not collaterally estopped. *Id.* at 493.

The District Court also held that a prisoner is entitled to post-conviction DNA testing as a matter of substantive due process, provided that the government would incur negligible costs, and the testing, assuming it yields exculpatory results, would prove the prisoner's innocence

- 8 -

beyond a reasonable doubt. *Id.* at 492. But, the District Court concluded, McKithen failed to meet that standard because "[e]ven exculpatory results of DNA testing conducted on the knife handle would fall far short of proving beyond a reasonable doubt that McKithen did not commit the crime." *Id.* at 494 n.67. In other words, McKithen was not entitled to relief on substantive due process grounds because any possible exculpatory DNA results would not outweigh the other inculpatory evidence and prove his innocence beyond a reasonable doubt.

Finally, the District Court addressed McKithen's remaining claims for relief. The District Court held that McKithen was not entitled to evidence as a matter of access to the courts in order to prove his innocence in New York Supreme Court pursuant to N.Y. Crim. Proc. Law § 440.10(1)(g). *Id.* at 494. As with its denial of McKithen's substantive due process claim, the District Court reasoned that, even if one assumed that DNA testing would yield exculpatory results, McKithen would not satisfy section 440.10(1)(g)'s standard for overturning a conviction: that the newly discovered evidence "would 'probably change the result' of a new trial." *Id.* (quoting *People v. Tankleff*, 848 N.Y.S.2d 286, 300 (App. Div. 2007)). The District Court rejected McKithen's Confrontation Clause claim and left undecided his Eighth Amendment claim. *Id.* at 492. This appeal followed.

**II.      Discussion**

Brown raises three arguments for reversal: (1) the District Court's procedural due process analysis was incorrect, (2) McKithen's section 1983 action was untimely and barred by New York's statute of limitations, and (3) McKithen's action was precluded as a matter of collateral estoppel. In resolving this appeal, we assume, *arguendo*, that McKithen's suit is not barred by the statute of limitations or by preclusion doctrine. Instead, because recent Supreme Court precedent clearly controls the outcome of this appeal, we only address the merits of McKithen's

due process claim, which we review *de novo*. *Motorola Credit Corp. v. Uzan*, 509 F.3d 74, 80-81 (2d Cir. 2007). McKithen contends that section 440.30(1-a)(a) is unconstitutional on its face because it does not require state courts to assume that the DNA testing sought will produce exculpatory results. In the alternative, McKithen also argues that, even if the statute *does* require state courts to assume exculpatory results, the state court in his case violated procedural due process because it failed to make that required assumption. We consider each challenge in turn.

A.    Facial due process challenge

In remanding this case for a decision on the merits, we assigned the District Court the unenviable task of determining the existence and contours of a constitutional right previously not recognized within our Circuit. The District Court produced an opinion notable for its careful attention to precedent and for the quality of its reasoning, which proved to be intricate and, in many ways, persuasive. But, while this appeal was pending, the Supreme Court decided *District Attorney's Office for the Third Judicial District v. Osborne*, 129 S. Ct. 2308 (2009). That decision addressed the question of prisoners' substantive and procedural due process rights to obtain evidence for post-conviction DNA testing and governs the disposition of this appeal.[3]

1.    *The facts and procedural history of* Osborne

Because of the similarities between the issues raised in *Osborne* and the issues raised in this appeal, we begin our discussion with a brief recital of *Osborne*'s facts and procedural history. William Osborne was convicted in Alaska of rape and attempted murder. While pursuing state post-conviction relief, he moved to conduct DNA testing that his trial counsel did

---

[3] We stayed this appeal following the Supreme Court's grant of certiorari in *Osborne*. Order, No. 08-4002-pr (2d Cir. Dec. 5, 2008).

not perform on physical evidence introduced against him.[4]  Although there was no state statute permitting post-conviction DNA testing — Alaska was among the four states whose legislatures had not passed such a law — Alaska courts analyzed Osborne's request through its general post-conviction discovery statute and the state and federal constitutions.  Under Alaska's post-conviction statute, the disclosure of evidence for DNA testing is permitted as a matter of general discovery, provided that the petitioner successfully claims that the "newly discovered evidence" would establish "by clear and convincing evidence that the applicant is innocent."  *Osborne*, 129 S. Ct. at 2317 (quoting *Osborne v. State*, 110 P.3d 986, 992 (Alaska Ct. App. 2005)).  And under the Alaska courts' interpretation of the state constitution, a petitioner is entitled to post-conviction DNA testing if (1) the conviction primarily relied on eyewitness identification, (2) there was a "demonstrable doubt" about the identification of the defendant, and (3) "scientific testing would likely be conclusive on the issue."  *Id.* at 2318.  Using those sources, the state courts denied Osborne's motion because he requested a DNA test that was available at trial and, assuming there existed a right to be free from erroneous imprisonment under the state and federal constitutions, the evidence against Osborne was too overwhelming for the DNA testing to establish his innocence clearly and convincingly.  *Id.*

Osborne sought access to physical evidence for DNA testing under 42 U.S.C. § 1983 in a parallel federal action in which the Ninth Circuit held that he was entitled to post-conviction DNA testing under the Due Process Clause of the Fourteenth Amendment.  *Osborne v. Dist. Attorney's Office for the Third Judicial Dist.*, 521 F.3d 1118 (9th Cir. 2008).  Specifically, the

---

[4] At trial, Osborne's counsel introduced DNA evidence procured from an outdated and less-exacting DNA method.  In his post-conviction proceeding, Osborne sought to have the evidence retested using a more discriminating test.  *Osborne*, 129 S. Ct. at 2314.

Court of Appeals ruled that *Brady v. Maryland*, 373 U.S. 83 (1963), applied in post-conviction proceedings and that prosecutors have a duty to disclose exculpatory evidence after trial when that evidence would support a viable challenge to the prisoner's conviction. The Ninth Circuit held that Osborne had such a viable claim: a state and likely federal constitutional cause of action based on his actual innocence. *Id.* at 1128-32. The Supreme Court subsequently granted certiorari and reversed the Ninth Circuit's due process ruling, holding that Osborne was not entitled to DNA evidence in post-conviction proceedings as a matter of either substantive or procedural due process. We now apply that decision to the District Court's ruling that McKithen was entitled to conduct post-conviction DNA testing as a matter of procedural due process.

2.	*Procedural due process*

We review McKithen's claim according to the familiar two-part test for analyzing alleged deprivations of procedural due process rights: (1) whether McKithen has a cognizable liberty or property interest under state or federal law in obtaining the evidence for DNA testing; and (2) if so, whether McKithen was afforded the process he was due under the Constitution. *Osborne*, 129 S. Ct. at 2319; *Adams v. Suozzi*, 517 F.3d 124, 127 (2d Cir. 2008). *Osborne* is apposite and controls both parts of this test.

a.	The existence of a residual liberty interest in meaningful access to state clemency mechanisms

The *Osborne* Court's analysis of the first part of the procedural due process test was short. But despite its brevity, it succeeds in toppling the District Court's determination that prisoners retain a residual liberty interest in meaningful access to state clemency mechanisms. In his merits briefing before the Supreme Court, Osborne, like McKithen, posited that prisoners are entitled to conduct post-conviction DNA testing in order to vindicate a right of meaningful

- 12 -

access to state clemency mechanisms that can provide relief to the actually innocent. *See* Br. for Resp't at 28, 30, *Dist. Attorney's Office for the Third Judicial Dist. v. Osborne* (No. 08-6). The Supreme Court summarily rejected that argument, however:

> In identifying his potential liberty interest, Osborne first attempts to rely on the Governor's constitutional authority to grant pardons, commutations, and reprieves. That claim can be readily disposed of. We have held that noncapital defendants do not have a liberty interest in traditional state executive clemency, to which no particular claimant is *entitled* as a matter of state law. Osborne therefore cannot challenge the constitutionality of any procedures available to vindicate an interest in state clemency.

*Osborne*, 129 S. Ct. at 2319 (quotations and citations omitted) (emphasis in original).

The *Osborne* Court concluded that a prisoner has no liberty interest with respect to "any procedures available to vindicate an interest in state clemency" because clemency is inherently discretionary and subject to the whim, or grace, of the decisionmaker; it is, in other words, a form of relief to which a prisoner has no right. *Id.*; *accord Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272, 282-83 (1998) (plurality opinion) (holding that prisoner facing capital punishment has no due process right to be represented by counsel before parole board because there is "no substantive expectation of clemency"); *Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 458, 464-65 (1981) (holding that the "unilateral hope" of receiving clemency does not establish a constitutionally protected liberty interest, and, therefore, prisoners have no due process right to receive written statements of reasons for the denial of their pardon petitions). Because there is no liberty interest in receiving clemency, the *Osborne* Court rejected the existence of any subsidiary liberty interest regarding the adequacy of state procedures capable of granting that relief. Thus, the District Court's holding that a prisoner has a liberty interest in meaningful access to state clemency mechanisms does not survive *Osborne*.

> b.   The process due a prisoner seeking post-conviction DNA testing

- 13 -

Although there is no constitutionally cognizable residual liberty interest in obtaining clemency and no subsidiary interest in the adequacy of state clemency mechanisms, the *Osborne* Court recognized that a prisoner may retain a state-created "liberty interest in demonstrating his innocence with new evidence under state law." 129 S. Ct. at 2319. It held that Osborne had a residual liberty interest, arising out of Alaska law, in proving his actual innocence before state courts that can provide post-conviction relief on the basis of that demonstration. But the Court was clear that this residual liberty interest is limited. It does not entitle a prisoner to all exculpatory evidence, the kind of discovery that a defendant would be entitled to before trial. *Id.* at 2320. Rather, a prisoner's "right to due process is not parallel to a trial right, but . . . must be analyzed in light of the fact that he has already been found guilty at a fair trial, and has only a limited interest in postconviction relief." *Id.*

McKithen holds an analogous state-created liberty interest in demonstrating his innocence with newly discovered evidence pursuant to N.Y. Crim. Proc. Law § 440.10(g)(1).[5] The question presented by McKithen's facial challenge is whether the procedure for post-conviction DNA testing established in N.Y. Crim. Proc. Law § 440.30(1-a)(a) violates procedural due process by not adequately protecting a prisoner's residual liberty interest in proving his innocence in state court. After *Osborne*, it is clear the process afforded by section 440.30(1-a)(a) is constitutionally adequate.

---

[5] The District Court, consistent with *Osborne*, acknowledged that McKithen holds a residual liberty interest in accessing New York courts to pursue an actual innocence claim pursuant to section 440.10(g)(1). *McKithen II*, 565 F. Supp. 2d at 479. But the District Court did not conduct a full analysis of McKithen's procedural due process rights to obtain evidence in order to bring a state post-conviction action; instead, it focused its inquiry on the process due a prisoner seeking evidence for the purpose of petitioning for clemency.

- 14 -

In granting McKithen's procedural due process claim based on his interest in meaningful access to clemency mechanisms, the District Court applied the framework of *Mathews v. Eldridge*, 424 U.S. 319 (1976), which we had instructed it to apply at the conclusion of *McKithen I*. In *Osborne*, however, the Supreme Court held that the more deferential standard of *Medina v. California*, 505 U.S. 437 (1992), governs the process due a prisoner seeking evidence for the purpose of obtaining post-conviction relief. *Osborne*, 129 S. Ct. at 2320. That standard, which the *Medina* Court described as applying to "state procedural rules which . . . are part of the criminal process," will uphold a state's procedure so long as it does not "offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental" based on historical practice, the process's operation, and the Court's own precedent. 505 U.S. at 443, 446.

Using *Medina*'s substantially deferential standard, the *Osborne* Court held that Alaska's procedures for post-conviction DNA testing, developed through the Alaska courts' interpretation of the state's constitution and post-conviction statute, "[were] not inconsistent with the 'traditions and conscience of our people' or with 'any recognized principle of fundamental fairness.'" *Osborne*, 129 S. Ct. at 2320-21 (quoting *Medina*, 505 U.S. at 446, 448). Although a petitioner must meet certain eligibility requirements under Alaska law to obtain discovery and perform DNA testing — namely, the petitioner must show that the DNA results were not discoverable at trial and would constitute clear and convincing evidence of the petitioner's innocence — those requirements were not "fundamentally inadequate" to vindicate a prisoner's substantive right to post-conviction relief on the basis of actual innocence. *Id.* at 2320. The Supreme Court therefore held Alaska's procedures for post-conviction DNA testing to be

- 15 -

consistent with due process.

In holding that *Medina* controls, the *Osborne* Court was clear that the lower federal courts are to defer to the judgment of state legislatures concerning the process due prisoners seeking evidence for their state court post-conviction actions. "Federal courts may upset a State's postconviction relief procedures only if they are fundamentally inadequate to vindicate the substantive rights provided." *Id.* at 2320. McKithen cannot demonstrate that New York's procedures sink to that level of fundamental inadequacy, and section 440.30(1-a)(a), even when understood not to require state courts to assume that the DNA testing sought will produce exculpatory results, cannot be said to conflict with the "traditions and conscience of our people" or "any recognized principle of fundamental fairness."[6]

A comparison of the Alaska post-conviction DNA testing scheme upheld in *Osborne* with the requirements for conducting post-conviction DNA testing in New York proves the weakness of McKithen's claim. A post-conviction petitioner seeking DNA testing in Alaska's courts may receive it under the following conditions: (1) through the process of general discovery in support of a claim under Alaska's general post-conviction statute, provided that newly conducted DNA testing will provide "clear and convincing evidence that [the petitioner] is innocent"; or (2) pursuant to the Alaska courts' interpretation of the state constitution, provided that the petitioner's conviction relied on eyewitness testimony, there was a demonstrable doubt about the accuracy of that testimony, and "scientific testing would likely be conclusive on this issue."

---

[6] We express no opinion regarding whether section 440.30(1-a)(a) does or does not require New York courts to assume that the DNA testing sought will yield exculpatory results. We simply hold that even if, as McKithen asserts, the statute does not require that assumption, it nevertheless passes constitutional muster under *Osborne*.

*Osborne*, 129 S. Ct. at 2317-18. The standards that Alaska employs for post-conviction DNA testing are more restrictive and difficult to meet than the standard New York has promulgated. In contrast to Alaska's post-conviction discovery laws, New York's post-conviction DNA testing statute requires only a showing that, had the DNA testing been performed at trial, "there exists a *reasonable probability* that the verdict would have been more favorable to the [petitioner]." N.Y. Crim. Proc. Law § 440.30(1-a)(a) (emphasis added). Alaska's requirement that DNA test results either "clearly and convincingly" or "conclusively" would demonstrate a prisoner's innocence is more stringent than New York's requirement that DNA test results create a "reasonable probability" that the petitioner would have had a more favorable outcome at trial. Alaska's procedures withstood a due process claim analogous to McKithen's challenge to N.Y. Crim. Proc. Law § 440.30(1-a)(a). *A fortiori*, New York's procedure for post-conviction DNA testing must be constitutional as well.

Barring proof of fundamental inadequacy, *Osborne* obligates us to defer to the New York legislature's judgment with respect to the appropriate procedure for post-conviction DNA testing. And, in light of the procedure *Osborne* upheld, McKithen cannot prove that New York's post-conviction DNA statute is fundamentally inadequate to vindicate his residual liberty interest in demonstrating his innocence through a state post-conviction proceeding. We therefore reject McKithen's facial due process challenge to N.Y. Crim Proc. Law § 440.30(1-a)(a).

   B.   As-applied due process challenge

In addition to asserting a facial challenge, McKithen also asserts an as-applied challenge to the New York Supreme Court's application of N.Y. Crim. Proc. Law § 440.30(1-a)(a) in his case. In particular, he argues that "if this Court finds that the statute is not unconstitutional on its

face, the state court incorrectly and unconstitutionally interpreted the statute by not assuming exculpatory results." Supplemental Br. of Pl.-Appellee, Apr. 5, 2010, at 2-3. That as-applied challenge can be readily disposed of because, under the *Rooker-Feldman* doctrine, we lack subject matter jurisdiction to consider it.

*McKithen I* clarified when the *Rooker-Feldman* doctrine deprives a federal court of jurisdiction to consider a plaintiff's claim. As we explained, *Rooker-Feldman* is a limited doctrine aimed at "'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review of those judgments.'" *McKithen I*, 481 F.3d at 96 (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283-84 (2005)). *Rooker-Feldman* directs federal courts to abstain from considering claims when four requirements are met: (1) the plaintiff lost in state court, (2) the plaintiff complains of injuries caused by the state court judgment, (3) the plaintiff invites district court review of that judgment, and (4) the state court judgment was entered before the plaintiff's federal suit commenced. *Id.* at 97 (quoting *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005)).

McKithen's as-applied challenge meets each of *Rooker-Feldman*'s elements. First, McKithen lost in state court when the New York Supreme Court denied his motion for the disclosure of evidence for DNA testing pursuant to N.Y. Crim. Proc. Law § 440.30(1-a)(a). Second, McKithen posits that he was injured by the state court's allegedly erroneous interpretation of section 440.30(1-a)(a) — specifically, by the New York Supreme Court's failure to assume that the results of his requested DNA testing would be exculpatory. Third, by bringing an as-applied challenge, McKithen is asking the federal district court to review the

- 18 -

validity of the state court judgment. And, fourth and finally, not only was the state court judgment rendered before McKithen commenced his federal suit, it *must* have been rendered as a condition antecedent to McKithen's claim that the New York Supreme Court injured him by purportedly misreading section 440.30(1-a)(a).

The proper vehicle for McKithen to challenge the state court's interpretation of section 440.30(1-a)(a) was an appeal to the New York Appellate Division, which McKithen could have brought as a matter of right. N.Y. Crim. Proc. Law § 450.10(5); *e.g.*, *People v. Bailey*, 825 N.Y.S.2d 708 (App. Div. 2d Dep't 2006). This Court lacks jurisdiction to consider McKithen's as-applied challenge to N.Y. Crim. Proc. Law § 440.30(1-a)(a).

C. Remaining claims

Brown appealed the District Court's decision on other grounds, too, including that McKithen's procedural due process claims were barred by New York's three-year statute of limitations and collateral estoppel. We need not address those issues, however, because *Osborne* clearly compels our reversal of the District Court on the merits. McKithen's substantive due process, access to the courts, and confrontation clause claims were denied by the District Court and McKithen has not appealed them.[7] The District Court did leave undecided McKithen's Eighth Amendment claim, however.

Although neither of the parties to this appeal briefed the Eighth Amendment claim — indeed, it was ambiguous whether McKithen was continuing to pursue it in the District Court, *McKithen II*, 595 F. Supp. 2d at 492 — we agree with the District Court that "[t]he only way the

---

[7] McKithen acknowledges that "[i]n *Osborne*, the Supreme Court held that . . . there is no free-standing substantive due process right to DNA evidence." Br. of Pl.-Appellee, Jan. 27, 2010, at 2 (citing *Osborne*, 129 S. Ct. at 2322-23).

Eighth Amendment is possibly implicated," as a legal means for compelling the disclosure of evidence for post-conviction DNA testing, "is if it permits a freestanding claim of actual innocence." *Id.* The Supreme Court has left conspicuously unanswered the question whether the Eighth Amendment provides such a freestanding claim. But, in the cases where it has assumed the right's existence *arguendo*, the Court has noted "the difficult questions such a right would pose and the high standard any claimant would have to meet." *Osborne*, 129 S. Ct. at 2321. The record on appeal is sufficient for us to conclude without remand that McKithen would not be entitled to the relief he seeks under the Eighth Amendment, even if we were to assume there is an Eighth Amendment right to be free from punishment on the basis of actual innocence. *See Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 112 (2d Cir. 2009) (noting that factual record was detailed enough to permit disposition on appeal without remand). The case against McKithen — specifically, the uncontradicted eyewitness testimony against him and the identification of the weapon — is simply too strong to hold that DNA testing would produce evidence either necessary or sufficient to support a constitutional actual innocence claim in federal court.

We therefore dismiss McKithen's Eighth Amendment claim.

**III.    Conclusion**

The District Court crafted a thoughtful and careful decision on a difficult constitutional issue of first impression. Nevertheless, we are bound to apply the law later set forth by the Supreme Court in *Osborne* — which, by no one's fault, arrived too late to save the judicial resources spent on the District Court's original ruling, this Court's remand ruling, and the District Court's subsequent ruling; and which now forces us to end this case by reversing the District Court's decision on the merits.

The order of the District Court is REVERSED. Each party shall bear its own costs.